## FRIENDLY v. McCULLOUGH.

CHATTEL MORTGAGE–SUBSEQUENT ADVANCES–COMMISSION–SERVICES.

Where a mortgagee of chattels, under an agreement subsequent to the mortgage, agreed to take possession of the property mortgaged (logs, &c.) and manufacture them into lumber, at the mill of the mortgagor, and sell the same, and out of the money realized, after deducting all costs and expenses, to apply the residue on the chattel mortgage: *Held*, that it was not error to allow for necessary repairs on the mill.

When advances have been made on the credit of the property mortgaged, and there are no intervening equities of third parties, and the court below held the property mortgaged liable for the payment of the subsequent, as well as the original debt: *Held*, there was no error.

Where a certain per cent. is agreed to be paid as a commission on all sales of lumber, for services, and the services have been performed according to the terms of the agreement, and the evidence discloses no undue advantage, imposition or fraud in the transaction: *Held*, that the party was entitled to his commission.

APPEAL from Benton. The facts are given in the opinion.

*Kelsay & Burnett*, for appellant.

*F. A. Chenoweth and J. R. Bryson*, for respondent.

By the Court, LORD, C. J.:

This is a suit in equity to foreclose a chattel mortgage. After the execution of the chattel mortgage, the complaint alleges that the respondent and appellant entered into an agreement that the respondent should take possession of the saw logs mortgaged, run them down Mary's river to the saw-mill of appellant, manufacture them into lumber, and sell the lumber, and out of the proceeds to pay, first, all the costs and expenses of running and sawing the logs into lumber, and all the expenses connected therewith, and apply the remainder on the chattel mortgage.

Pursuant to this agreement the respondent took possession of the logs, and manufactured them into lumber. For managing and carrying on said business, and selling said lumber, the appellant promised to pay respondent a commission of ten per cent. on all sales of lumber.

From the exceptions made at the argument it is unnecessary to state further facts of the pleadings. The defendant Henkle is in no wise concerned in the case as it is presented on the appeal.

The evidence shows, in the account taken, that the total amount .of sales of lumber to April 1, 1880, was thirteen thousand three hundred and thirty-two dollars and eighty-two cents, and that the total expenses amounted to the sum of ten thousand six hundred and seventy-three dollars and forty-five cents, leaving the sum of two thousand six hundred and fifty-nine dollars and thirty-seven cents, to be applied on the chattel mortgage, to which is also to be added the sum of three thousand two hundred and fifty-nine dollars and thirty-seven cents.

According to the evidence, the chattel mortgage was composed of one note, dated Dec. 23, 1878, for one thousand dollars, at twelve per cent. interest per annum; one note for twenty-five hundred and eighteen dollars, of same date, and drawing the same rate of interest, and advances to be made in goods to the amount of sixteen hundred and fifty-seven dollars, but the amount received was thirteen hundred and ninety-seven dollars, making a total, with interest upon the notes, of the sum of five thousand four hundred and seventy-five dollars and seventy-nine cents. Applying the sum of three thousand two hundred and fifty-nine dollars and thirty-seven cents, as a credit on the mortgage, and there remains due thereon the sum of twenty-two hundred and sixteen dollars and forty-two cents. The amount found due on the mortgage by the court below is twenty-five hundred and twenty-one dollars and sixteen cents.

To this result, and every part of it, several exceptions were made, which will be considered in the order treated in the argument.

The first exception is that the sum of one thousand two hundred and seventy-six dollars, paid out for repairs on the mill, is too much, and more than was necessary to keep the

mill in good running order. A bill of items accompanies the deposition, and no item of that expense for repairs has been designated, or shown to be unnecessary. The argument proceeded on the theory that the saw-mill was in good condition when the respondent took charge, and by comparison from evidence of those who had run saw-mills, claimed that the charge was too much, and if expended, some of it was unnecessary. It is not denied that the actual expenses paid out for necessary repairs should be allowed. The evidence shows, however, that the saw-mill, at the time the respondent took charge of it, was "in a poor condition," and very much out of repair. That the stoppages, in consequence of it, were frequent, and the repairs made absolutely necessary to run the mill and manufacture the lumber.

It will only be necessary to refer briefly to the evidence on this point to establish that condition of things beyond controversy. Mr. Smith, who was foreman, testifies that the mill was "in a very poor condition," and that they "never run more than two or three days without a break-down;" that "all the repairs put on it were absolutely necessary," and that "the mill could not be run without them." Mr. Lewis, who was book-keeper at the mill, testifies that "the mill was not in good repair, and the expense was considerable; that there were a great many repairs to be made, and that they were necessary to be made, and necessitated the shutting down of the mill." Mr. Jacobs testified that "we had a heap of break-downs, and repairing and fixing the mill to make it run."

Mr. Couchman, the engineer, and the respondent, testified to the same effect. The appellant testifies that some of the repairs were necessary, but that many of the breakages were through carelessness, and some unnecessary to repair. The appellant was about the mill during much of the time, but he fails to show in the evidence what "breakages" arose from carelessness, or designate what repairs were unnecessary.

The evidence of the other witnesses, all of whom had

worked for the appellant in the mill, before the respondent took charge under the agreement, shows that the mill was in a poor condition, and subject to frequent break-downs, and that the repairs made were absolutely necessary to run the mill. We do not think that the court below erred in allowing this expense for repairs.

The second exception is, that the sum of fifteen hundred and ten dollars, paid out on the orders of the appellant, ought not to be allowed, because the same is not included in the mortgage—are outside of the mortgage. It appears from the evidence that the different sums advanced, which make this aggregate, were paid out on the written and verbal orders of the appellant, and that at the time the respondent took possession of the mill, under the agreement, the appellant owed considerable sums to different hands employed in getting the logs on Mary's river, which he had not paid, and which it was necessary to pay to keep the hands at work, and get the mortgaged logs on Mary's river down to the mill to be manufactured. It appears, too, from the evidence, and the manner in which the business was conducted, that it was the understanding of the parties, when the advances or credits were given on the orders, that it was on the credit of the property mortgaged. It is not material whether it be included in the expense account, or tacked, the result will be the same under the circumstances of this case.

There can be no doubt, from the evidence, but what the amount charged was obtained upon the written and verbal orders of the appellant, and subsequently to the execution of the mortgage, and was, in our opinion, to be taken out of the property mortgaged, or, in other words, advanced on the credit of the mortgaged property.

There is not in this case any intervening equity of other creditors, and when the rights of third parties do not intervene, there is every reasonable intendment to be made in favor of the doctrine of tacking, as to chattel mortgages. "For without any proof of a distinct agreement, the property may

be held until the subsequent as well as the original debt is paid, upon the principle that he who seeks equity must do equity; and the party seeking relief in court ought to pay all that is due his creditor, the presumption being that the subsequent advances would not have been made but upon the credit of the property mortgaged, and will be tacked to it if no other incumbrancer resists." (Herman on Chattel Mortgages, section 56.)

The appellant asks for the accounting, and when the facts and circumstances show that the advances were made with the understanding that the property held or mortgaged should be liable, there does not seem to be any reason, in the absence of intervening equities, why the property mortgaged may not be held until the subsequent as well as the original debt is paid.

In *James* v. *Johnson*, 6 John. R., 429, the Chancellor said: "In many cases, a subject pledged for a debt may be considered as a security for further loans, and I see no possible objection to it, if no intervening rights exist to prevent the justness of the application of the rule. We are to presume that further debts were created, or advances made, on the credit of the original security. It is only where the rights of third parties are prejudiced by the want of notice, that the extension of security is provided. Under the circumstances of this case the exception is not well taken.

The third exception is, that the appellant ought to be allowed an average of fifteen dollars per thousand for all the lumber sold. All the circumstances of this case show that it was the intention of the parties to manufacture the logs into lumber as speedily as possible, and get it ready for market, so as to realize the money for it, and apply it according to the agreement, and that to induce sales, some of the lumber was sold for lower rates than the usual market prices. The respondent testifies that some of the lumber sold for less than twelve dollars per thousand; that he had an understanding with the appellant to that effect. Lewis, the book-keeper at

the mill, testifies that he sold lumber at a lower figure than the usual rates, under the instructions of the respondent, and when asked whether the appellant did not object to this, says: "Well, McCullough told me to do just as Friendly told me to do; that they had an understanding about it." This corroborates the statement of the respondent, and shows there was an understanding in respect to selling the lumber at a lower figure than the usual rates.

The price of the lumber, as is further disclosed, varied according to the grade, and the whole number of feet manufactured from the logs mortgaged, and the amount arising from the sales of the same, is reported.

Numerous exhibits are attached, giving the different items connected with the management of the business. The evidence shows that the appellant kept an account of all transactions, and stood ready with his books to furnish any explanation, or to give a bill of items, or to submit his books for examination, if desired. When asked whether it had been his practice to ascertain the sum total of the sales each week, he answered that it was, and "as far as the sales, the account had been very strict at all times." As if to test the accuracy of this statement, and the correctness of the account kept, he was asked to examine his books and tell how much lumber was sold for the two weeks following the 20th day of October, 1879. He refers immediately to his books, gives the dates, the number of feet sold, the amount sold on credit, and the amount sold for cash. Satisfied on this point, the appellant does not seem to have deemed it necessary to press the inquiry further. No error or mistake is shown in his account or books, and as far as we can see from the evidence, there is no suppression or concealment.

The argument proceeded upon the theory that the number of feet sold ought to have realized a larger sum than the amount reported, but that calculation is based on a fixed rule, arbitrarily assumed, which ignores the fact in evidence, of a

reduction in the price, by an understanding of the parties, which produced that result.

The fourth exception is, that the ten per cent. agreed to be paid to the respondent, on the sales of lumber, for managing the business, ought not to be allowed, because the services were not worth that much, and were not fully performed by the respondent. It is claimed that Lewis, the book-keeper at the mill, attended to the sales and much of the management, and that the business was principally carried on through him. Lewis was book-keeper for the appellant, before and at the time the respondent took charge and undertook the management of the business under the agreement. He was retained, as were the other employes at the mill, as seems to have been the understanding of the parties. The evidence does not afford much opportunity for controversy on this point, nor is the promise to pay this per cent. on the sales of lumber denied, only that the services were irregular and occasional, not commensurate with his engagement, nor of the value claimed.

Where the compensation is fixed by agreement, if the services have been performed, the agreement ought to be enforced, unless grossly inequitable. But we do not think the evidence sustains the view claimed for the appellant. On the contrary, it shows that the respondent was active and attentive in his management of the business; was looked to as the responsible head to direct and superintend it, and was present whenever and wherever the duties and interests of that business required him. Tested by the evidence, it cannot be said that he failed to perform, in part, his engagement. All the circumstances detailed show his connection with and superintendence of getting the logs down the river, manufacturing them into lumber and selling the same, and all incidental matters in connection therewith. It may be that the per cent. agreed to be paid is large, but this fact may be more apparent now, when the accounting has taken place, and all the facts can be seen in their bearing of unprofit, than when the contract was made. There is nothing in the evidence, or in the

nature of the transaction, which discloses any undue influence, imposition or fraud. In the absence of these elements, where the parties have made their own bargain, and fixed the compensation, presumably at the time for the mutual benefit and advantage of each, we do not feel authorized, when the results have not proven as profitable to one or the other as may have been expected, to refuse to enforce the agreement allowing the commission.

As before stated, the amount found due by the court below on the mortgage, and for which a decree was rendered, is the sum of twenty-five hundred and twenty-one dollars and sixteen cents, which must be modified, and in lieu of that sum, the decree on the mortgage must be for the sum of twenty-two hundred and sixteen dollars and forty-two cents; but with this exception, and in respect to all other things and sums, the decree of the court below is affirmed.

Decree affirmed.