Filed: February 28, 2013

IN THE SUPREME COURT OF THE STATE OF OREGON

STATE OF OREGON,

Respondent on Review,

v.

JAMES ANTHONY HARRELL,

Petitioner on Review.

(CC CR060548; CA A138184; SC S059513)

STATE OF OREGON,

Respondent on Review,

v.

SAMUEL ALLEN WILSON,

Petitioner on Review.

(CC C071438CR; CA A138740; SC S059461)
(Consolidated for opinion)

On review from the Court of Appeals.*

Argued and submitted March 8, 2012.

Anna Fujita Munsey, Senior Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause for petitioner on review James Anthony Harrell. With her on the briefs was Peter Gartlan, Chief Defender. Joshua B. Crowther, Chief Deputy Defender, Office of Public Defense Services, Salem, argued the cause for petitioner on review Samuel Allen Wilson. With him on the brief was Peter Gartlan, Chief Defender.

Jeremy C. Rice, Assistant Attorney General, Salem, argued the cause for

respondent on review.  With him on the briefs were John R. Kroger, Attorney General, Anna M. Joyce, Solicitor General, and Ryan Kahn, Assistant Attorney General.

Jesse Wm. Barton, Salem, filed a brief on behalf of *amicus curiae* The Bunker Project.

Before Balmer, Chief Justice, and Kistler, Walters, and Linder, Justices, and Durham and De Muniz, Senior Judges, Justices pro tempore.**

DE MUNIZ, Justice pro tempore.

The decisions of the Court of Appeals are reversed.  The cases are remanded to the circuit courts for further proceedings.

Linder, J., concurred in part and dissented in part and filed an opinion in which Kistler, J., joined.

*Appeal from Yamhill County Circuit Court,
 John L. Collins, Judge.
 241 Or App 139, 250 P3d 1 (2011).

 Appeal from Washington County Circuit Court,
 Mark Gardner, Judge.
 240 Or App 708, 247 P3d 1262 (2011).

**Landau, Brewer, and Baldwin, JJ., did not participate in the consideration or decision of this case.

DE MUNIZ, Justice pro tempore.

In these two criminal cases, consolidated for purposes of opinion, each defendant attempted to waive his constitutional right to a jury trial as guaranteed by Article I, section 11, of the Oregon Constitution.[1] In both cases, the trial court refused to consent to the waiver, and juries subsequently convicted each defendant of the charges against him. In *State v. Harrell*, 241 Or App 139, 250 P3d 1 (2011), the Court of Appeals concluded that the trial court had not abused its discretion in refusing defendant Harrell's requested jury waiver and affirmed the convictions. On review in *Harrell*, we reverse the Court of Appeals decision and remand to the trial court with instructions to reconsider defendant's jury waiver. In *State v. Wilson*, 240 Or App 708, 247 P3d 1262 (2011), the Court of Appeals concluded that the trial court's refusal to consent to defendant's requested jury waiver had been within the trial court's discretion and went on to affirm defendant's convictions. On review in *Wilson*, we reverse the decision of the Court of Appeals and remand to the trial court to reconsider defendant's jury waiver.

## I. FACTS AND PROCEDURAL BACKGROUND

A.     *State v. Harrell*

In September 2006, defendant was involved in an altercation outside a bar in which he stabbed one victim with a folding knife and injured a second in the ensuing commotion. Defendant was charged by indictment with multiple counts of assault,

---

[1]     The relevant text of Article I, section 11, is set out below.

1

attempted assault, and unlawful use of a weapon.

Following a four-day trial, the jury began deliberations and, after three hours, submitted two written questions for the trial court. First, the jury asked, "If [defendant] is found guilty of first degree is he guilty of 2nd automatically?" The trial court answered, "No. Second degree assault requires proof beyond a reasonable doubt that the defendant caused the injury 'recklessly under circumstances manifesting extreme indifferent to the value of human life.'" The jury then asked, "Can (is it allowed that a persons [*sic*]) a persons [*sic*] demeanor from 'self defense' to 'intent to cause injury' be done instantaneously?" The trial court replied, "I do not understand your question. Would you like to clarify or rephrase it?" The jury did not submit any further queries.

Shortly after the trial court had been given the jury's questions, defendant indicated that he wished to waive his jury trial right and permit the trial court to rule on the charges against him. The record shows that defendant's counsel submitted a document to the trial court captioned "Waiver of Jury Trial" and had it marked and placed in the record. The document was signed by defendant Harrell and recited that, although he was fully aware of his right to a jury determination regarding the charges against him, he nevertheless wished to waive that right in favor of a determination made by the trial court judge sitting alone. The document further stated that defendant had executed the waiver "voluntarily with full understanding of my rights and without any threat or promise."

The trial court -- after opining that it probably had the authority to grant the waiver if the prosecutor agreed -- nevertheless stated that, "absent an agreement[,] I don't

2

think the court has the authority to grant the motion." The prosecutor responded by arguing that it "would be dangerous precedent" to allow defendants to waive jury trials whenever they disliked a question that the jury had submitted to the trial court. After the prosecutor indicated that her preference was to have the jury decide the case, the trial court denied defendant's requested jury waiver, stating:

> "I think at this stage in the process I don't think I even have the discretion --
> I have the discretion to do it if both sides agree. I -- as I said to you I would
> be willing to, but I don't think I have the discretion to dismiss the jury at
> this stage."

Several hours later, the trial court judge submitted his own sealed verdict, which the parties agreed to accept to avoid a retrial if the trial court had erred in refusing to allow defendant's requested jury waiver. Ultimately, the jury convicted defendant on two counts of second-degree assault and acquitted him on the remaining charges. After the jury had been released, the trial court judge stated that he would have acquitted defendant on all eight counts. As noted, the Court of Appeals affirmed defendant's convictions, and we allowed defendant's petition for review.

B.    *State v. Wilson*

In April 2007, defendant was driving his vehicle one night after consuming a significant quantity of alcohol. His driver license was suspended at the time as a result of an earlier conviction for driving under the influence of intoxicants. Eventually, defendant ran a stop sign and collided with another car, killing its driver. Defendant subsequently was charged with first-degree manslaughter, second-degree assault, driving under the influence of intoxicants, and driving while suspended.

3

Before his scheduled trial, defendant sought to waive his right to a jury. We are unable to find anything in the record showing that a written waiver was ever tendered to the trial court or that the need for such a writing was even discussed.[2] The record does show that, following an in-chambers discussion with the parties, the trial court declined to accept defendant's requested waiver. When trial began the next day, the trial court allowed the parties to recite, for the record, the previous day's discussions regarding defendant's attempted jury trial waiver:

"[DEFENSE COUNSEL]: I do want the record to reflect what happened yesterday, that we had a meeting in chambers, that the prosecutor objected to our waiver of a jury. In this case, the specific grounds were that he felt that the extreme indifference to the value of human life was a community standard that a jury and not a Judge should decide.

"I would simply argue that it's a legal standard like any others that we're dealing with. The Court's certainly capable of determining whether the facts meet that or not. And I would just point out that I don't think the State has any authority to intervene or object to a waiver. That's a defendant's right, again, with the Court's consent. * * *

"[TRIAL COURT]: Okay. Is there anything you want to say for the record on that?

"[PROSECUTOR]: Simply I -- I didn't object. I just did -- I did request that the Court exercise its discretion."

The trial court then explained the rationale for its decision:

"[TRIAL COURT]: Okay. Well, it's been my policy over the years to try to be in a situation where if someone had an objection to me acting as

---

[2] The parties, however, do not assign error to the lack of a written waiver or otherwise argue that its absence should impact the holding in this case. We assume that, because the trial court did not consent to defendant's waiver, there was no need for defendant to tender a written waiver.

4

the finder of fact that I would not, in fact, act in that capacity.  And, so, *based upon the State's request here, I do not give my consent to -- to allow the defendant to waive his right to jury trial* and that's the end of the matter, as far as I'm concerned."

(Emphasis added.)  Defendant's case was then tried to a jury, and he was found guilty on all counts.  Defendant appealed, the Court of Appeals affirmed his convictions, and, as already noted, we allowed defendant's petition for review.

## II.  ANALYSIS

Under the Oregon Constitution, criminal defendants possess both the right to be tried by a jury *and* the concomitant right -- albeit bounded by judicial consent -- to waive that jury trial guarantee in favor of a bench trial.  To that end, Article I, section 11 provides, in part:

"In all criminal prosecutions, the accused shall have the right to public trial by an impartial jury in the county in which the offense shall have been committed; * * * provided, however, that any accused person, in other than capital cases, and with the consent of the trial judge, may elect to waive trial by jury and consent to be tried by the judge of the court alone, such election to be in writing[.]"

As we discuss later in this opinion, the people adopted that wording as a constitutional amendment in 1932.

In *State v. Baker*, 328 Or 355, 976 P2d 1132 (1999), this court interpreted the jury waiver portion of that constitutional provision following an amendment to ORS 136.001 that granted the state its own separate statutory right to pursue jury trials in criminal prosecutions.  The court concluded that the statute was unconstitutional because it authorized the state to insist on a jury trial despite a defendant's unequivocal request to waive such proceedings under Article I, section 11.  *See* 328 Or at 360 ("Granting the

5

state the right to demand a jury trial, when the defendant desires otherwise and the trial judge accepts the defendant's choice, is inconsistent with Article I, section 11.").  In doing so, the court identified the trial court as the only entity possessing the "discretionary choice to deny a criminal defendant in a noncapital criminal case the right to waive trial by jury."  *Id*. at 364.

On review, both defendants argue that the scope of that judicial discretion, when applied to a trial court's consent in matters of jury waiver, is limited to ascertaining whether the defendant's waiver request was knowingly, intelligently, and voluntarily made.  The state, however, contends that nothing in the text, context, or history of the Article I, section 11, amendment at issue here suggests that Oregon voters intended to impose any specific subject-matter limitation on the trial court's "consent" authority.  According to the state, the text and context of that provision

> "gives the trial court the voluntary *choice* to consent or to withhold consent, according to its own free and deliberated choice."

(Emphasis in original.)  Moreover, the state adds that the history of Oregon's jury waiver provision demonstrates that voters did not intend to place *any* limitations on what a trial court could consider in reaching that decision.  Specifically, it argues that

> "voters would have understood that the trial court, as an individual entity, had *subjective* authority over its consent decision and thus, was not limited to its consideration of specific factors."

(Emphasis in original.)


III.  DISCUSSION

6

We begin by observing that the state is incorrect in its attempt to categorize a trial court's authority to grant or deny consent under Article I, section 11, as a purely subjective judicial consideration, one having no boundaries whatsoever outside of the trial judge's own "free and deliberated choice." The act of choosing to consent or not consent as described by the state is itself a classic example of an exercise in judicial discretion. *See State v. Rogers*, 330 Or 282, 312, 4 P3d 1261 (2000) (explaining, in terms of evidentiary decisions, that "'discretion' * * * refers to the authority of a trial court to choose among several legally correct outcomes. If there is only one legally correct outcome, 'discretion' is an inapplicable concept[.]"). It is well established, however, that judicial discretion is not absolute. *State v. Hubbard*, 297 Or 789, 794 n 2, 688 P2d 1311 (1984). Judicial discretion should, for example, "be exercised according to fixed legal principles in order to promote substantial justice." *Elliott v. Lawson*, 87 Or 450, 453-54, 170 P 925 (1918). And judicial discretion "never authorizes arbitrary, capricious action that tends to defeat" that substantive end. *State ex rel Bethke v. Bain*, 193 Or 688, 703, 240 P2d 958 (1952). In short, judicial discretion is always bounded by a simple framework: It must be lawfully exercised to reach a decision that falls within a permissible range of legally correct outcomes. *See Rogers*, 330 Or at 312 (no abuse of discretion where trial court's decision falls within range of legally correct choices and produces a permissible, legally correct outcome). Our task here is to construe the parameters of that framework as it applies to Article I, section 11, and to determine whether the trial courts' refusal to consent to defendants' jury waivers was an exercise of discretion that took place within those legal confines.

7

The range of legally correct outcomes under Article I, section 11, depends on the voters' intent in enacting the "jury waiver" amendment to that constitutional provision. *See, e.g., Dickinson v. Davis*, 277 Or 665, 673, 561 P2d 1019 (1977) (describing discretion as a range of responsible choices in pursuing objectives "more or less broadly indicated by the legislature (or, in Oregon, by the people themselves) under various circumstances pertinent to those objectives"). Because the jury waiver provision was added to Article I, section 11, by legislative referral, we apply the interpretive methodology for initiated constitutional provisions and amendments set out in *Roseburg School Dist. v. City of Roseburg*, 316 Or 374, 378, 851 P2d 595 (1993), and *Ecumenical Ministries v. Oregon State Lottery Comm.*, 318 Or 551, 559, 871 P2d 106 (1994). *See Stranahan v. Fred Meyer, Inc.*, 331 Or 38, 56, 11 P3d 228 (2000) (explaining methodology). Under that framework, our task is to discern the intent of the voters. *Id.* The best evidence of the voters' intent is the text and context of the provision itself and, if the intent is clear, "the court does not look further." *Ecumenical Ministries*, 318 Or at 559. Nevertheless, "caution must be used before ending the analysis at the first level, *viz.*, without considering the history of the constitutional provision at issue." *Stranahan*, 331 Or at 57.

We begin with the pertinent text. The portion of Article I, section 11, at issue here provides that criminal defendants,

> "in other than capital cases, and with the consent of the trial judge, may elect to waive trial by jury and consent to be tried by the judge of the court alone, such election to be in writing[.]"

Adopted by Oregon voters as a state constitutional amendment in 1932, the provision has

8

remained unchanged from the time of its adoption.

It is clear from the text set out above that a criminal defendant cannot waive his or her right to trial by jury without at least two components: a written waiver and the trial court's consent to that waiver. As to written waivers, we have recognized that, for purposes of Article I, section 11, that component is essential to a valid jury waiver. In *State v. Barber*, 343 Or 525, 173 P3d 827 (2007), the defendant had been convicted of burglary and theft in a bench trial conducted on stipulated facts. On appeal, the judgment was affirmed by the Court of Appeals. The record, however, contained neither a written waiver of defendant's right to a jury trial nor any other indication that defendant had executed such an agreement. *Id.* at 527. On review, this court reversed and remanded, holding that "[t]here is no waiver of a jury trial unless that waiver is in writing, and without a waiver, defendant should have been tried by a jury. The judge's error thus lay in going to trial at *all*." *Id.* at 530 (emphasis in original).

The requirement of trial court consent, in contrast, is less well defined. What the text does not reveal is the precise place in the landscape of judicial discretion wherein that consent may either be granted or withheld. Unsurprisingly, dictionaries in use at the time that Article I, section 11, was amended identify the word "elect" as a verb meaning "to select" or "to determine by choice; to decide upon; to choose." *Webster's New Int'l Dictionary of the English Language* 706 (1910). Judicial "consent," on the other hand, is a noun. It means "voluntary accordance with, or concurrence in, what is done or proposed by another; acquiescence; compliance; approval; permission." *Id*. at 478. Used in a purely legal context, "consent" is defined as "capable, deliberate, and

9

voluntary assent or agreement to, or concurrence in, some act or purpose, implying physical and mental power and free action." *Id*.; *see also Black's Law Dictionary* 254 (1891) (defining consent as a "concurrence of wills").

Had the drafters of the jury waiver provisions in Article I, section 11, intended trial court judges to have absolute, unfettered discretion to decide whether a defendant's case should be tried to the court or to a jury, those drafters would have used the word "elect" or "election" in relation to trial judge as well as criminal defendants. *See, e.g., State v. Shaw*, 338 Or 586, 603, 113 P3d 898 (2005) (in construing statute, this court presumes that legislature intended same term in same statute to have same meaning throughout, as well as presuming that use of a term in one section and not in another indicates a purposeful omission). They did not do so. Article I, section 11, separately refers to (1) the defendant's "election" -- a choice; and (2) the trial judge's "consent" -- a concurrence with what the defendant has chosen. That text underscores the unremarkable proposition that choosing to waive a jury falls squarely within a defendant's prerogative to initiate; it does little, however, to explain what factors may inform a trial judge's decision to consent to that choice.

In interpreting constitutional provisions adopted by ballot measure, we examine several aspects of the provision in question in order to discover the voters' intent: (1) the text of the ballot measure that gave rise to the provision; (2) the text of any related ballot measures submitted to voters during the same election; and (3) related constitutional provisions that were in place when the provision at issue was adopted. *George v. Courtney*, 344 Or 76, 84, 176 P3d 1265 (2008). We also examine relevant

10

case law interpreting the provision at issue, *Oregon Telecommunications Assn. v. ODOT*, 341 Or 418, 426, 144 P3d 935 (2006), as well as rules of construction that bear directly on the provision's interpretation in context. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 612 n 4, 859 P2d 1143 (1993) (structure for interpreting statutes enacted by legislature also applies to constitutional amendments adopted by initiative or referendum).

In this case, our inquiry is aided by the fact that this court has already explored the history of the jury waiver clause at issue here, first in *State v. Wagner*, 305 Or 115, 752 P2d 1136 (1988), and later in *Baker*, 328 Or 355.

That history discloses that the provision was the result of a 1932 amendment to the Oregon Constitution.[3] In *Wagner,* this court examined -- for the first time -- the history of the amendment, stating:

"Prior to the 1932 amendment, the section provided:

---

[3] As general background, it is worth noting that the idea of adding a jury waiver clause to the state constitution actually predated the clause's implementation by several years. As part of an Oregon Judicial Council report in 1929, Justice Harry H. Belt had recommended the amendment, citing as the advantages it would bring to Oregon:

"(1) [s]avings of expense and time in empanelling juries; (2) more expeditious manner of trial when conducted before a court; (3) elimination of error arising out of court's instructions; (4) protection to defendant where crime charged is of such nature as to arouse passion and prejudice."

*Report of Oregon Judicial Council for the Year*, 9 Or L Rev 332, 341 (1930).

11

> "'In all criminal prosecutions, the accused shall have the right to public trial by an impartial jury in the county in which the offense shall have been committed; to be heard by himself and counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor.'

> "By Senate Joint Resolution 4, the 1931 legislature referred to the people a proposed amendment to add to section 11 a *proviso*:

>> "'provided, however, that any accused person, in other than capital cases, and with the consent of the trial judge, may elect to waive trial by jury and consent to be tried by the judge of the court alone, such election to be in writing.'

> "At the general election on November 8, 1932, the amendment was adopted."

*Wagner*, 305 Or at 129.

Later, in *Baker,* this court concisely set out the applicable parts of the 1932 Voters' Pamphlet that had explained the proposed amendment to Oregon's electorate:

> "'**AMENDMENT AUTHORIZING CRIMINAL TRIALS WITHOUT JURIES BY CONSENT OF ACCUSED** -- Purpose:  To provide that any accused person in other than capital cases, and with the consent of the trial judge, may choose to relinquish his right of trial by jury and consent to be tried by the judge of the court alone, such election to be in writing.

> "' \* \* \* \* \*

> "'**AMENDMENT AUTHORIZING CRIMINAL TRIALS WITHOUT JURIES BY CONSENT OF ACCUSED** -- Purpose:  To authorize accused persons except in capital cases to relinquish right of trial by jury by consent of judge, and be tried by judge only.

> "'**(On Official Ballot, Nos. 302 and 303)**

> "'**ARGUMENT (Affirmative)**

> "'Submitted by the joint committee of the senate and house of representatives, thirty-sixth regular session, legislative assembly, in behalf

12

of the **Amendment Authorizing Criminal Trials Without Juries by Consent of Accused**.

"'The purpose of this proposed constitutional amendment is to permit the accused in criminal cases, with the consent of the trial judge, to waive trial by jury and be tried by judge alone. This would apply to all crimes excepting capital offenses. Although not expressly required by the wording of the amendment, it is nevertheless thought the consent of the district attorney should be obtained as well as that of the judge before whom the case may be tried.

"'Under present requirements of the constitution, jury trial is compulsory in criminal cases. There are many cases that may be tried by the judge, and without jury, *speedily, economically and fully protecting the right of the accused*. The requirement that consent of accused and judge must both be obtained, with the suggestion that the approval of the district attorney be secured also in applying the measure, assure its carefully considered and reasonable use. [Emphasis added.]

"'Similar provisions are effective in many states. Rights of the state and accused are fully preserved and the adoption of the amendment should accomplish a substantial saving in the time and expense now incurred in criminal trials. Where adopted its use is general and the percentage of court trials has been large.

"'It should be kept in mind [that] the right to waive trial by jury, provided herein, applies only to criminal cases and requiring consent of accused and trial judge, cannot be used oppressively.'"

328 Or at 362-63 (emphasis omitted; boldface and brackets in original) (quoting *Wagner*, 305 Or at 132-43).

Several points emerge from the history set out above. Oregon voters of the period would have recognized that, at the time of the 1932 general election, full jury trials were compulsory in criminal matters, at least in cases where the defendants had opted for a trial rather than a guilty plea. They also would have recognized that the proposed jury waiver provisions were intended to create an alternative to the standard criminal trial, an alternative designed to secure the benefits of greater speed and greater economy while

13

"fully protecting the rights of the accused."  Indeed, voters would have understood those benefits to be the primary purpose for amending the constitution to allow criminal defendants to forgo trial by jury.

How, exactly, would a waiver provision realize that purpose as a practical matter?  The trial court judge was the most prominent state actor in the proposed jury waiver process.  As a result, if a criminal defendant sought to waive the right to trial by jury in favor of a bench trial, the perceived responsibility for ensuring that the bench trial would be quicker, cheaper, and fully protective of the accused's rights would have fallen naturally to the judiciary.  Those goals, however, could have been thwarted if trial judges were able to decline to consent to the bench trial option for an invalid reason or no reason at all.

From the historical perspective set out above, we believe that voters in 1932 expected that the amendment would lead to cases "'that may be tried by the judge, and without jury, *speedily, economically and fully protecting the right of the accused*.'" *Baker*, 328 Or at 362-63 (emphasis added) (quoting *State v. Wagner*, 305 Or at 132-43). Consequently, they had reason to expect that the discretion undergirding a trial court's consent -- or lack thereof -- to such proceedings for the most part would be informed by inquiries that corresponded to the amendment's overarching purpose:  Will the resulting proceedings be faster?  Will they be more economical?  Will they fully protect the rights of the individual accused of a crime?  As a general rule, affirmative answers to those questions logically would lead to the conclusion that a criminal defendant's jury waiver should be granted.

14

In addition to identifying judicial economy considerations, the Voters'

Pamphlet at page 6 also contained the following statement:

> "The requirement that consent of accused and judge must both be obtained,
> with the suggestion that the approval of the district attorney be secured also
> in applying the measure assure its carefully considered and reasonable use."

*Baker*, 328 Or at 363 (emphasis and citations omitted).

Based on that reference to the district attorney in the Voters' Pamphlet

material, the court in *Baker* reasoned that, although the district attorney's consent to a

jury waiver is not required by the text of the provision, the trial judge should, in making

its discretionary decision, "consider and give due weight to the preferences of the district

attorney." 328 Or at 364. In *Baker*, the court had no occasion to determine the nature of

the district attorney's "preferences" that are entitled to judicial consideration or what

weight a trial court should give a district attorney's "preference" for or against a

defendant's jury waiver.

We recognize that it is difficult to anticipate the variety of circumstances

that might prompt a prosecutor to express a preference for or against a defendant's jury

waiver in an individual case. However, given that the prosecutor's role as a

representative of the state is not just to convict a criminal defendant, but to seek justice in

every case, we anticipate that a prosecutor's "preference" will be consistent with

promoting judicial economy and seeking justice as the circumstances of an individual

case indicate. *See, e.g., Berger v. United States*, 295 US 78, 88, 55 S Ct 629, 79 L Ed

1314 (1935) ("The United States Attorney is the representative not of an ordinary party to

a controversy, but of a sovereignty whose obligation to govern impartially is as

15

compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done."). And, the prosecutor's "preference" should be weighed by the trial judge with those goals in mind.

With regard to the notion of increased speed and economy, it is well-established that trial courts generally possess broad discretion to ensure that the proceedings before them are orderly and expeditious. *Rogers*, 330 Or at 301. *See also* ORS 1.010(3) (every court of justice has power to provide for orderly conduct of proceedings before it). And it goes without saying that, when defendants seek to waive jury trials in favor of bench trials, such a procedural change ordinarily results in a saving -- often substantial -- of time and money. Trial courts can realize those potential savings by consenting to a defendant's waiver of trial by jury. In some circumstances, however, the more important question will be the one that remains: Will a bench trial fully protect a defendant's rights?

In that regard, the observations and holdings from this court that serve as context for the jury waiver provision of Article I, section 11, are instructive. As a general matter, the right to trial by jury in criminal matters is fundamental to the American system of justice. In Oregon, that right -- set out at Article I, section 11 -- is personal to the individual criminal defendant. *See State v. Barber*, 343 Or at 529 (noting that provision is worded as an individual right).

The right to a jury trial can be waived in either state or federal court, so long as the waiver demonstrates an "intentional relinquishment or abandonment of a known right or privilege." *State v. Harris*, 339 Or 157, 174, 118 P3d 236 (2005) (quoting

16

*Johnson v. Zerbst*, 304 US 458, 464, 58 S Ct 1019, 82 L Ed 1461 (1938)). There is, however, a pronounced difference between the state and federal constitutions regarding the level of protection afforded a defendant's ability to waive those proceedings. Nothing in the United States Constitution authorizes criminal defendants to waive trial by jury in favor of a bench trial. Consequently, in federal proceedings, a "criminal defendant does not have a constitutional right to waive a jury trial and to have his case tried before a judge alone." *United States v. Goodwin*, 457 US 368, 383 n 18, 102 S Ct 2485, 73 L Ed 2d 74 (1982). In that regard, the United States Supreme Court has held that

> "[a] defendant's only constitutional right concerning the method of trial is to an impartial trial by jury. We find no constitutional impediment to conditioning a waiver of this right on the consent of the prosecuting attorney and the trial judge when, if either refuses to consent, the result is simply that the defendant is subject to an impartial trial by jury -- the very thing that the Constitution guarantees him."

*Singer v. United States*, 380 US 24, 36, 85 S Ct 783, 13 L Ed 2d 630 (1965).

In Oregon, by contrast, the right to waive trial by jury is guaranteed within the text of the state constitution, and is part of a panoply of trial-related rights expressly set out in Article I, section 11, and reserved to criminal defendants. Those rights include the above-mentioned right to public trial by an impartial jury; the right to trial in the county in which the offenses were committed; the right of criminal defendants to be heard by themselves and by counsel; the right to demand the nature and cause of a criminal accusation and to have a copy thereof; and the right to meet witnesses face to face and to have compulsory process for obtaining witnesses in the defendant's favor.

The right to waive trial by jury is found in the midst of those individual

17

rights. Consequently, the jury waiver provision of Article I, section 11, should be read in context as a right no less fundamental and no less personal than the other rights with which it is associated in the Oregon Constitution. That reading of the provision comports with the interpretive canon *noscitur a sociis* ("it is known by its associates"),

> "an old maxim which summarizes the rule both of language and of law that the meaning of words may be indicated or controlled by those with which they are associated."

*Nunner v. Erickson*, 151 Or 575, 609, 51 P2d 839 (1935). That maxim of construction pointedly "invites the court's attention to the entire context and not to one passage only." *White v. State Ind. Acc. Comm.*, 227 Or 306, 317, 362 P2d 302 (1961).

Here, that context underscores the fact that, in Oregon, the ability to waive trial by jury is a constitutional right that belongs to the individual who wishes to exercise it. And if the exercise of that right is to be protected, then a trial court's consent under Article I, section 11, should focus on the validity of the defendant's election to waive a jury trial. As with any other waiver of a constitutional right, trial courts must take care to ensure that the waiver is not

> "the product of duress or misrepresentation. It must be voluntary and must be understandingly made with knowledge by the party of his [or her] rights."

*Huffman v. Alexander*, 197 Or 283, 322, 251 P2d 87 (1952).

After considering the text, context, and history of the jury waiver provisions of Article I, section 11, we hold that the discretion informing a trial court's decision to consent to a jury waiver should be guided generally by the factors discussed above, including the prosecutor's expressed preference, rather than the trial court's purely

18

subjective predilections. Specifically, a trial court should evaluate a criminal defendant's decision to waive trial by jury in the context of improving judicial economy, taking into account considerations of speed, economy, and the prosecutor's expressed preference for or against defendant's waiver, and the continued protection of the defendant's rights. Although those are the primary considerations, we do not foreclose on the possibility that other considerations might arise in an individual case. We turn now to the resolution of the two cases before us.

A.    *State v. Harrell*

In *State v. Harrell*, defendant's decision to waive his jury right arose during jury deliberations after the jury had submitted a question to the trial judge, that, in defense counsel's view, demonstrated that the jury was "hopelessly confused" in its application of the law to the evidence before it. Defendant then tendered, in writing, a signed jury waiver to the trial court. The trial court indicated that it did not believe that defendant had a constitutional right to waive the jury at that stage of the proceedings; the trial court, however, also stated that it was willing to accept defendant's jury waiver, but only if the prosecutor agreed to the waiver as well. Without that agreement, the trial court opined, it lacked the discretion to dismiss the jury during deliberations. The prosecutor, for her part, made clear that she objected to defendant's waiver request and asserted that she did not find the questions tendered to the trial court indicative of juror confusion.

After trial, but before judgment was entered, defendant moved the court to reconsider its decision denying defendant's jury waiver on the ground that the court did,

19

in fact, have authority to grant that waiver during jury deliberations. The trial judge reiterated the basis of his initial ruling, stating: "I want to say it, again, that * * * I ruled at that time I didn't believe that the defendant had a constitutional right to waive jury at that stage[.]" *Id.* at 143. In doing so, the trial judge seemed to be saying that the prosecutor had a veto power over defendant's waiver decision. *Id.* at 143-44.

The trial judge then explained that, if he was wrong and had discretion to exercise despite the late timing of defendant's motion, he would, nevertheless, not consent to defendant's jury waiver because of the lateness of the motion; the prosecutor's concerns and objection; the fact that, had the judge sat through the trial as the factfinder, he would have had a greater focus on the factual evidence and would have taken more notes; and that he had a particular familiarity with a "close witness" for the defense, which he believed could "be perceived as having some influence on my decision if I was the trier of fact." *Id.* at 144-45. The trial judge concluded by saying: "[T]o the extent that it is in my discretion to change my mind and reconsider, I'd have to tell you that I have reconsidered, but still, having reconsidered, I * * * believe that my decision was the correct one at that time." *Id.* at 145 (emphasis omitted).

Based on the forgoing, it is difficult to determine whether the trial judge's refusal to consent to defendant's exercise of his right to waive a jury was premised on a belief that, at that stage of the proceeding, (1) he lacked authority to exercise discretion to consent to the waiver, or (2) he believed he could not consider the waiver without a prosecutor's consent, or (3) he had concluded that defendant's requested waiver was inconsistent with considerations of judicial economy and that he should in an exercise of

20

discretion withhold his consent.

Because we cannot determine the actual basis on which the trial court refused to consent to defendant's exercise of his right to waive the jury, we conclude that our best course is to remand to the trial court to reconsider defendant's jury trial waiver in accordance with this opinion.

B.     *State v. Wilson*

We reach the same result in *State v. Wilson*.  Before his scheduled trial date, defendant sought to waive his right to a jury.  The record is somewhat unclear regarding the prosecutor's exact position on defendant's requested jury waiver, but the trial court apparently concluded that the prosecutor had, in fact, objected to defendant's waiver request.  In doing so, the trial court erred because it withheld its consent to defendant's jury trial waiver based solely on the prosecutor's perceived objection -- a position that was not based on considerations of speed, economy, or the protection of defendant's constitutional rights.  Because the trial court withheld its consent to defendant's jury waiver based on an impermissible criterion, its decision in that regard was not produced by an exercise of discretion guided by the above-mentioned considerations.  Consequently, we remand to the trial court to reconsider defendant's jury trial waiver.

## IV. CONCLUSION

In *State v. Harrell*, the decision of the Court of Appeals is reversed, and the case is remanded to the circuit court with instructions to reconsider defendant's jury trial waiver in accordance with this court's opinion.  In the event the circuit court determines that it should not have withheld its consent to defendant's jury waiver, then the circuit

21

court shall issue an order reversing defendant's convictions and entering judgments of acquittal on all counts.

In *State v. Wilson*, the decision of the Court of Appeals is reversed, and the case is remanded to the circuit court with instructions to reconsider defendant's jury trial waiver in accordance with this court's opinion. In the event the circuit court determines that it should not have withheld its consent to defendant's jury waiver, then the circuit court shall enter an order reversing defendant's convictions and granting defendant a new trial.

The decisions of the Court of Appeals are reversed. The cases are remanded to the circuit courts for further proceedings.

**LINDER, J.,** concurring in part and dissenting in part.

I agree with the majority's essential legal analysis in these cases, which recognizes that a trial judge's decision whether to consent to a jury waiver in a criminal case may be based on an array of considerations, including the interests of the state, as articulated by the prosecutor. I further agree that the trial judge may not simply defer to the position of the prosecutor in a way that delegates the decision whether to consent to the prosecutor, rather than base the decision on the trial judge's independent and informed judgment. Consequently, I agree with the majority that *State v. Wilson* 240 Or App 708, 247 P3d 1262 (2011), must be reversed, because the record does not reflect that the trial judge exercised independent discretion in that case. In *State v. Harrell*, 241 Or App 139, 250 P3d 1 (2011), however, I believe that this court should affirm the judgment. I write separately to explain my agreement with the majority's essential legal analysis and

22

disposition in *Wilson*, and my disagreement with the disposition in *Harrell*.

## I. HISTORICAL BACKGROUND

I begin by examining in some additional depth the circumstances that led to the 1932 amendment to Article I, section 11, of the Oregon Constitution because they aid in illuminating the role of a trial judge's consent to waiver of a jury in a criminal trial.

Criminal bench trials were unheard of at English common law. Instead, trial by jury was "the one regular common-law mode of trial," and defendants had no right or means to choose trial by a judge in place of a jury. *Singer v. United States*, 380 US 24, 26-29, 85 S Ct 783, 12 L Ed 2d 630 (1965) (discussing common-law jury trial right). Although there apparently were occasional criminal bench trials early on in a few American colonies, the practice was never widespread; by the time the United States Constitution was adopted, complete with the Sixth Amendment guarantee of a jury trial in criminal cases, bench trials were not perceived to be an option in criminal prosecutions. *Id*. at 28-31. Thus, early federal cases, including *dicta* by the United States Supreme Court, expressed the view that trial by jury was the only constitutionally permissible method of trial in criminal cases. *Id.* at 31-32 (citing cases). And most jurisdictions presented with the issue had held that a defendant in a criminal case, although able to waive trial entirely by pleading guilty, could not waive a jury and be tried instead by a trial court judge. Wayne R. LaFave, 6 *Criminal Procedure* § 22.1(h), 31 (3d ed 2007); *see generally* Erwin N. Griswold, *Waiver of Jury Trial in Criminal*

23

*Cases*, 20 Va L Rev 655, 655-56 (1934) (similar observation).[4]

By the mid- to late 1920s and early 1930s, various legal commissions, counsels, and commentators throughout the United States began endorsing "an optional trial without jury in all cases except capital" to deal with large criminal case backlogs and the concomitant delay in resolving criminal prosecutions. *See generally* S. Chesterfield Oppenheim, *Waiver of Trial By Jury in Criminal Cases*, 25 Mich L Rev 695, 695, 696 n 1 (1927) (urging legal reform and citing other legal authorities, committees, and councils similarly urging adoption of a bench trial option in noncapital criminal cases). Whether such an option should be at the unilateral election of a defendant, or subject to the consent of the prosecuting attorney, or the trial judge, or both, was open to policy debate, but the "economy of time" achieved with any reform that made criminal bench trials possible was considered "self-evident." *Id*. at 736-37 (discussing policy choices involved in various models for waiving jury and having bench trials in criminal cases).

In Oregon, the same discussions were taking place during that time period.

---

[4] Oregon followed that common law tradition. A criminal defendant in Oregon traditionally had an absolute right to plead guilty, which effectively waived the constitutional right to a jury trial on the factual basis for the charge. *See generally State v. Wagner*, 305 Or 115, 130-31, 752 P2d 1136 (1988), *vac'd on other grounds sub nom Wagner v. Oregon*, 492 US 914, 109 S Ct 3235, 106 L Ed 2d 583 (1989) (discussing criminal defendant's traditional right in Oregon to waive right to jury trial by pleading guilty); s*ee generally* ORS 135.385 (2)(a)(A) ("The court shall inform the defendant that by a plea of guilty * * * the defendant waives the right to trial by jury[.]"). What a defendant traditionally could not do was invoke the constitutional right to a trial while simultaneously waiving the guaranteed mode of trial -- that is, waive trial *by jury* and insist on a trial *by a judge* instead. No reported criminal case in Oregon proceeded to trial without a jury until after the 1932 amendment to Article I, section 11.

24

In particular, in 1929, the Oregon Judicial Council issued an annual report proposing, among other legal reforms, that the legislature at its next regular session refer to the voters a constitutional amendment that would authorize bench trials in all criminal cases, except those involving death or life imprisonment as a penalty. *Report of Oregon Judicial Council for the Year 1929*, 9 Or L Rev 332 (1930). In support of that proposal, the council quoted from a report prepared in another state, urging that the reform would save time and money and expedite the administration of criminal justice. *Id*. at 341-42. The specific proposal recommended by the Oregon Judicial Council was that the defendant, "if he shall so elect, * * * be tried by the court without the intervention of the jury[.]" *Id*. at 340. The election would have been unilateral; the Council's proposal did not condition the defendant's ability to waive jury and be tried by the trial judge on the consent or other agreement of either the prosecutor or the trial judge. As noted below, however, the 1929 proposal never went before the voters.

Shortly after the Council's report, the United States Supreme Court decided *Patton v. United States*, 281 US 276, 50 S Ct 253, 74 L Ed 854 (1930). The issue there was whether the defendant and the government, after one juror had to be released due to illness, could jointly agree to proceed before an 11- rather than a 12-person jury. The Court rejected the defendant's argument that, despite his agreement to proceed with only 11 jurors, he was entitled to a reversal of his conviction because the lack of a 12-person jury was a jurisdictional defect. *Id*. at 298. The Court further held that it was within a defendant's power to waive the mode of trial -- that is, a 12-person jury as guaranteed by the Constitution -- although a defendant had no absolute right to do so. The Court

25

explained:

> "Trial by jury is the normal and, with occasional exceptions, the preferable mode of disposing of issues of fact in criminal cases above the grade of petty offenses. In such cases the value and appropriateness of jury trial have been established by long experience, and are not now to be denied. Not only must the right of the accused to a trial by a constitutional jury be jealously preserved, but the maintenance of the jury as a fact-finding body in criminal cases is of such importance and has such a place in our traditions, that, before any waiver can become effective, the consent of government counsel and the sanction of the court must be had, in addition to the express and intelligent consent of the defendant. And the duty of the trial court in that regard is not to be discharged as a mere matter of rote, but with sound and advised discretion, with an eye to avoid unreasonable or undue departures from that mode of trial or from any of the essential elements thereof, and with a caution increasing in degree as the offenses dealt with increase in gravity."

*Id*. at 312-13. *Patton*'s pronouncement that waiver of the mode of trial was possible, at least with the concurrence of the government and the trial court, led to widespread acceptance of bench trials as a constitutionally permissible option in criminal cases, thus paving the way for the legal reform being urged across the nation. *See* LaFave, 6 *Criminal Procedure* § 22.1(h) at 31 (*Patton* led shift to acceptance of proposition that defendant in criminal case constitutionally could waive jury and be tried by judge); Griswold, 20 Va L Rev at 655-56 (observing that, until *Patton*, it was "far from clear" that a defendant in a criminal case could effectively waive jury and be tried by a judge).[5]

---

[5] To be sure, at the time, the Sixth Amendment to the United States Constitution had not yet been held to apply to the states, and so *Patton* announced a principle of federal law only. But because of the similarities and common origins of the federal and state constitutional guarantees of jury trial in criminal cases, *Patton* influenced thinking at the state level as well.

26

One year after *Patton* was decided, the Oregon legislature referred to the voters a proposed constitutional amendment authorizing bench trials in criminal cases. The measure, however, differed in substance in two ways from what the Oregon Judicial Council had proposed in its 1929 report. First, it excluded only capital cases, and not cases in which the penalty could potentially include life imprisonment. Ballot Measure 302 & 303 (1932). Second, and significantly for the analysis here, the measure expressly conditioned a defendant's ability to waive jury and consent to trial by the judge on the trial judge's consent as well. *Id.*

The lone argument in the Voters' Pamphlet addressing the amendment was drafted by a group of legislators who supported its passage. Official Voters' Pamphlet, General Election, Nov 8, 1932, 6. The argument explained that the Oregon Constitution made a jury trial compulsory in all criminal cases, but that "[t]here are many cases that may be tried by judge, and without jury, speedily, economically and fully protecting the right of the accused." *Id.* The argument repeatedly emphasized that trial by a judge rather than a jury required the consent of the trial judge in addition to that of the defendant. *Id.* The amendment identified no restrictions on the trial judge's power to give or refuse consent, except to imply that a judge *should* withhold consent (but was not required to do so) if the district attorney did not agree that the case should be tried by the judge. *Id.* ("Although not expressly required by the wording of the amendment, it is nevertheless thought the consent of the district attorney should be obtained as well as that

27

of the judge before whom the case may be tried.").[6]  Voters were reassured that, because a trial judge should consider the prosecutor's position in deciding whether to consent to a bench trial, the "requirement that consent of accused and judge must both be obtained * * * assure its carefully considered and reasonable use" and that the provision "fully preserved" both the "[r]ights of state and accused[.]"  *Id.*

That history reveals four points of importance.  First, when the Oregon Constitution was amended to authorize bench trials in noncapital criminal cases, the idea was a novel one.  Judges were not accustomed to serving as the trier of fact in criminal cases.  Citizens, likewise, were not accustomed to having a defendant's guilt or innocence decided by a single judge, rather than by a jury comprised of representative members of the community.  Second, the constitutionality of permitting a defendant unilaterally to dispense with a jury was uncertain.  The Supreme Court in *Patton* had at least suggested that any waiver of the *mode* of trial, as opposed to a waiver of a trial altogether, was constitutionally permissible only if the waiver was subject to the watchful and considered oversight of a trial judge.[7]  Third, shortly after *Patton* was decided, the Oregon legislature

---

[6]  As this court has previously recognized, the information before the voters effectively was "a recommendation that, in making its discretionary decision whether to allow a criminal defendant to waive trial by jury, the trial judge should consider and give due weight to the preferences of the district attorney."  *State v. Baker*, 328 Or 355, 364, 976 P2d 1132 (1999).  The voters thus were told only "what the trial judge *may* do" and not that the trial court's discretion was limited by the prosecutor's agreement.  *Id*. at 363-64 (emphasis in original).

[7]  As cases involving bench trials or a jury of fewer than 12 jurors reveal, precision is important in discussing waiver of the right to a "jury trial" or "trial by jury."

28

declined to refer to voters a measure giving a criminal defendant the unilateral ability to consent to trial by a judge instead of a jury, and instead expressly conditioned that election on the consent of the trial judge. Fourth, and finally, the argument in favor of the amendment emphasized to voters the importance of independent judicial consent in the waiver decision and that such consent should consider the interests of both the defendant and the prosecution.

With that historical background as context, I turn to the actual text of the 1932 amendment that the voters added to Article I, section 11, and to the majority's analysis of a trial judge's authority to give or withhold consent to a jury waiver in a criminal case.

## II. THE 1932 AMENDMENT

The original text of Article I, section 11, declared that an accused in a

---

When the waiver is a result of a guilty plea, it is a full waiver of the right -- there is neither a jury nor a trial. When the waiver occurs through an agreement to proceed with fewer than 12 jurors or with the judge as the finder of fact, the waiver is really a partial one only. In those circumstances, the defendant seeks to exercise the right to a trial, but waive some aspect of the guaranteed mode of trial. The Court in *Patton* specifically acknowledged that a defendant traditionally had been able to waive the right to jury trial (a full waiver) by pleading guilty to a charge, but implicitly differentiated such a waiver, which was unilateral, from a partial waiver of the mode of trial only (there, a 12-person jury). 281 US at 305-06. Some years later, in *Singer*, the Court further established that a criminal defendant's ability to waive his federal constitutional right to a jury trial does not confer on him the positive corollary right to be tried by a trial court judge. 380 US at 34-35. Consequently, the Court held that the federal jury waiver rule enacted in 1946 under Federal Rule of Criminal Procedure 23(a) constitutionally conditioned a defendant's ability to be tried by a judge in a federal criminal prosecution on both the government's and the trial court's consent; under federal law, a defendant has no absolute right to waive the mode of trial, as opposed to waiving trial entirely by pleading guilty. *Id*. at 36-37.

criminal prosecution "shall have the right to public trial by an impartial jury," but provided no alternative for trial by a judge. The 1932 amendment approved by the voters added the following text to that guarantee:

> "provided, however, that any accused person, in other than capital cases, and with the consent of the trial judge, may elect to waive trial by jury and consent to be tried by the judge of the court alone, such election to be in writing."

Or Const, Art I, § 11. As this court has observed, the amendment operates as a *proviso*[8] -- that is, a clause that introduces a condition or qualification to the jury trial right that Article I, section 11, otherwise guarantees.[9] The terms of that *proviso* and their collective meaning are straightforward: If the defendant and the trial judge mutually consent to have the trial judge alone try the case, the case may be so tried.

The essential analysis announced by the majority in this case accords with the voters' intent in adopting the amendment. As the majority recognizes, the provision authorizing a criminal defendant to waive the mode of trial resides among several rights "reserved to criminal defendants" in criminal cases by Article I, section 11, such as the right to compulsory process, the right of confrontation, and the guarantee of trial in the county in which an offense is committed. __ Or at __ (slip op at 17).[10] But the majority

---

[8] *Wagner*, 305 Or at 129.

[9] A *proviso* is "an article or clause (as in a statute, contract, or grant) that introduces a condition, qualification, or limitation and usu[ally] begins with the word *provided* * * *." *Webster's Third New Int'l Dictionary* 1827 (unabridged ed 2002) (emphasis in original).

[10] Of course, as the circumstances leading to the amendment reveal, at the

---

likewise recognizes that a criminal defendant's right or ability to elect to be tried by a judge instead of a jury is different in kind from any other guarantee in Article I, section 11 -- it is expressly made subject to the trial judge's consent. *Id.* at __ (slip op at 9).[11] The majority properly gives effect to that significant difference by acknowledging that the trial judge's consent is essential to a legally effective jury waiver in a criminal case. *See id.* (criminal defendant cannot waive jury without both written waiver and trial judge's consent to waiver); *see generally State v. Barber*, 343 Or 525, 529-30, 173 P3d 827 (2007) (Article I, section 11, guarantees adherence to a specified method of waiving jury, which consists of written waiver together with trial judge consent).

As a textual matter, the trial judge's authority to grant or withhold consent is not limited by any terms expressly set forth in the 1932 amendment. *See id.* at __ (slip op at 9) (also noting textual silence). I agree with the majority, however, that the trial judge's authority in that regard is not unbounded. Like any exercise of judicial discretion,

---

time, there was significant uncertainty whether the constitutional guarantee of a jury in a criminal case allowed defendant to waive jury and proceed before a judge. That presumably is why the change was brought about by constitutional amendment rather than by statute, and why textually the waiver provision was added as a *proviso* to the guarantee of a criminal jury trial, rather than a stand-alone right.

[11]     The legislature could have referred to the voters, and the voters might have approved, an amendment giving a criminal defendant the unilateral ability to waive jury and proceed before a judge, as a minority of states have done. *See* LaFave, 6 *Criminal Procedure* § 22.1(h) at 38 (describing unilateral waiver as minority approach). Oregon's provision is instead consistent with the far more prevalent model followed by states and the federal courts. *See id.* (most jurisdictions condition a defendant's criminal jury waiver on the consent of the court, the consent of the prosecution, or both).

the trial judge's decision to consent or not must reflect a reasoned exercise of judgment and be guided by the overall purposes to be served by the decision to be made. I agree with the majority, then, that among the appropriate factors for a trial judge to consider are the extent to which the waiver will ensure a speedy and economic resolution of a case and will fully protect a defendant's rights. *Id.* at __ (slip op at 14). But as the majority also recognizes, the equation is not one-sided. *See id.* at __ (slip op at 14-15) (acknowledging that trial judge should consider prosecutor's position). In being urged to vote for the 1932 amendment, voters were specifically told that conditioning the jury waiver on the trial judge's consent would ensure that the state's interests, as well as those of the defendant, would be equally considered by the trial judge. Official Voters' Pamphlet at 6; *see also State v. Baker*, 328 Or 355, 364, 976 P2d 1132 (1999) (trial judge, in deciding whether to consent to jury waiver, should "consider and give due weight to the preferences of the district attorney."). Consequently, a trial judge appropriately should consult and consider the position of the prosecutor as well as that of the defendant. And finally, I agree with the majority that this court should not now attempt to anticipate all circumstances that might inform a trial judge's decision whether to consent to a jury waiver. __ Or at __ (slip op at 15) ("[I]t is difficult to anticipate the variety of circumstances that might prompt a prosecutor to express a preference for or against a defendant's jury waiver in an individual case."). It is enough, for present purposes, to sketch the appropriate factors that may inform the consent decision in broad strokes, leaving it to future cases with

32

developed records to explore the legitimacy of considerations not presented in these cases.[12]

III.  DISPOSITION OF THESE CASES

A.    *State v. Wilson*

As I have described, I agree with the majority that we should reverse the judgment in *State v. Wilson* and remand for further proceedings.  The excerpts of the record set out in the majority opinion reveal that the prosecutor in *Wilson* objected to defendant's request to waive a jury, arguing that the mental state at issue -- extreme indifference to the value of human life -- was a community standard better resolved by a jury than a judge.  __ Or at __ (slip op at 4).  The record does not show, however, that the trial judge relied on the prosecutor's *reasons* for objecting to a jury trial or that the trial judge otherwise independently assessed what weight to give to the prosecutor's stated concern.  Instead, the trial judge made it clear that he generally requires the mutual

---

[12]    As one authority on criminal procedure observes, sensible rationales exist for requiring judicial consent to a jury waiver in a criminal case.  They include giving the judge latitude to play the role that she or he believes will best protect the defendant, instilling community confidence in the outcome of the case, obtaining valuable jury input on matters of witness credibility and community standards, ensuring that juries continue to have a role in criminal proceedings, and preventing use of jury waivers to manipulate the trial process in illegitimate ways (such as trying to force severance of charges in circumstances where the state is entitled to join them).  LaFave, 6 *Criminal Procedure* § 22.1(h) at 39 (discussing rationales and citing representative authorities).  We need not -- and should not -- consider other rationales in the abstract, rather than wait to assess their appropriateness in a case in which the trial judge has relied on one or more of those or other considerations.

33

consent of the prosecutor and the defendant to proceed with a bench trial, and here, because the prosecutor objected, that was "the end of the matter."  In denying the request on that ground, the trial judge abused his discretion by failing to make his own independent and informed decision.  Instead, the trial judge effectively delegated his consent to the prosecutor, which he may not do.  *See Baker*, 328 Or at 364 (legislature may not by statute require prosecutor's consent to bench trials as a condition of granting them, because the constitution "grants to only one person," the trial judge, the discretionary choice to deny a criminal defendant in a noncapital case the right to waive trial by jury); *State v. Larson*, 325 Or 15, 26, 933 P2d 958 (1997) (legal error for trial court to decline to exercise discretion when it has obligation to make discretionary decision).  For that reason, I agree that the appropriate disposition in *Wilson* is to reverse the judgment and remand to the circuit court for further proceedings.

B.      *State v. Harrell*

*Harrell* presents both a different and a closer question.  In *Harrell*, defendant, at the outset of the case, invoked his right to trial by jury, rather than waive it and be tried by a judge.  A jury was selected, and a four-day trial followed.  While the jury was deliberating, defendant advised the court that he wanted to waive jury and consent to trial by the judge.  Defendant explained that he was doing so at that stage of the proceedings because he believed, based on a question tendered to the court by the jury, that the jury was "hopelessly confused."  The prosecutor objected, urging that the jury's question may have been inarticulate, but that it was understandable in the context of the factual evidence and did not show that the jury was confused.  The prosecutor also

34

relied on the trial judge's acknowledgment, in an off-record conference with counsel, that in the judge's experience, judges often do not listen to the evidence with the same focus when presiding as a judge rather than sitting as a factfinder, which had concerned the judge in this case, given the late timing of defendant's motion.

The trial judge denied defendant's request for a bench trial. In doing so, the trial judge made clear that he believed he had no discretion to exercise because of the *timing* of defendant's motion:

"at this stage in the process I don't think I even have the discretion -- I have the discretion to do it if both sides agree. I -- and I said to you I would be willing to, but I don't think I have the discretion to dismiss the jury at this stage.

"* ** * *

"So that's my reasoning. As I said to you I would be willing to make the decision, but I don't think that the law permits me to do so. So the Motion to Dismiss the Jury and Waive Jury Trial at this stage is denied."

In effect, the trial judge believed that, if the parties were to mutually agree to discharge the jury and proceed before the judge only, the judge could, through his usual authority to oversee the proceedings, do as the parties mutually agreed. But without that agreement, some source of law had to give defendant the ability to waive jury despite the prosecutor's objection. The trial judge did not believe that Article I, section 11, gave defendant such a right at that late stage of the proceeding. Therefore, because the prosecutor was unwilling to agree to dispense with the jury at that stage of the proceeding, the trial judge concluded that he had no power to grant defendant's motion.

If that were the extent of the record in *Harrell*, I would agree that this case

35

should be remanded to the trial court. The constitution does not expressly dictate the timing of the defendant's jury waiver by requiring the waiver to occur at the outset of the trial. The legislature likely could require the waiver to occur at an earlier point. *Baker*, 328 Or at 358 ("Criminal procedure is a subject over which the legislature generally has plenary authority, subject to constitutional restrictions."); *see generally State v. Mai*, 294 Or 269, 274-77, 656 P2d 315 (1982) (legislature generally may establish reasonable procedures to be followed in exercising constitutional rights as long as the procedures do not result in unfairness; witness could be precluded from testifying, in appropriate case, because defendant failed to comply with reciprocal discovery as required by statute). But the legislature has not done so, and the timing of defendant's election to waive a jury -- that is, post-trial but pre-verdict -- does not interfere with policies adopted by the legislature in other related and analogous areas. *See, e.g.*, ORS 135.380(2) (defendant may plead guilty, thus waiving jury trial, at arraignment "or any time thereafter"); ORS 135.365 ("at any time before judgment" court has discretion to permit plea of guilty to be withdrawn). Consequently, in my view, the trial judge's reason for denying the motion in that initial ruling reflected a legal error.

Again, if that were the extent of the record before us, I would agree that the case should be remanded for further proceedings. But that is not the end of the record. As the Court of Appeals discussed, after trial, but before judgment was entered, defendant moved the court to reconsider its decision denying defendant's waiver of jury trial on the ground that the court did, in fact, have authority to grant that waiver during jury deliberations. *Harrell*, 241 Or App at 143. The Court of Appeals opinion sets forth

36

extensive verbatim excerpts from the colloquy that followed on the record, which transpired over two separate hearings. The trial judge reiterated the narrow basis of his initial ruling: "I want to say it, again, that * * * I ruled at that time I didn't believe that the defendant had a constitutional right to waive jury at that stage[.]" *Id.* at 143. In doing so, he twice expressly clarified what he *was not* ruling -- he was not saying that the prosecutor had a veto power over defendant's waiver decision. *Id.* at 143-44.

After that clarification of his initial ruling, the trial judge then went beyond it and made an alternative ruling. He explained that, if he was wrong and could exercise his discretion despite the timing of defendant's motion, he would decline to allow the motion. As his reasons, the trial judge expressly recited: the lateness of the motion; the fact that, had the judge sat through the trial as the factfinder, he would have had a greater focus on the factual evidence and would have taken more notes; and he had a particular familiarity with a "close witness" for the defense, which he believed could "be perceived as having some influence on my decision if I was the trier of fact." *Id.* at 144-45. The trial judge concluded by saying: "[T]o the extent that it is in my discretion to change my mind and reconsider, I'd have to tell you that I have reconsidered, but still, having reconsidered, I * * * believe that my decision was the correct one at the time." *Id.* at 145 (emphasis omitted).

The majority concludes that it cannot determine the basis of the trial judge's ruling. __ Or at __ (slip op at 21). In my view, however, the record is clear. The trial judge took care in articulating on the record what effectively was an alternative ruling in response to defendant's motion to reconsider its initial ruling. That alternative ruling

37

provides a sound basis for the trial judge's unwillingess to consent to defendant's requested jury waiver. Defendant's motion to waive jury came after the four days of trial were concluded, and the jury had retired to deliberate. By coming so late, the waiver, if granted, would have cast the judge into a role that the judge had not prepared throughout the trial to perform; it would have wasted the jurors' time and efforts through a four-day trial, as well as the public's resources, in the form of the extra time and effort expended by the prosecutor and the judge and court staff; and it would have risked undermining the integrity of the proceedings and the confidence in the verdict in multiple ways, including the fact that the judge was familiar with a key defense witness.

In *Harrell*, the trial judge's reasons for denying defendant's request to discharge the jury and have the judge decide the case were self-evidently sound, and they comport with the letter as well as the spirit of Article I, section 11. There was no error, and there is no reason to remand the case to the trial court.

For those reasons, I concur in part and dissent in part.

Kistler, J., joins this opinion.

38